**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Emily A. Horne (State Bar No. 347723)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ehorne@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

KEVIN SMITH and LYLY TRAN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MIDWEST TAPE, LLC d/b/a HOOPLA,

Defendant.

Case No. 3:24-cv-08805-JD

**PLAINTIFF SMITH'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Date: April 24, 2025
Time: 10:00 a.m.
Courtroom: 11
Judge: Hon. James Donato

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. THE FEDERAL ARBITRATION ACT DOES NOT APPLY TO THE HOOPLA AGREEMENT ..... 2

A. The Hoopla Terms Do Not Concern A Transaction Involving Or Affecting Commerce ..... 3

B. The Hoopla Terms Do Not Involve Or Affect Interstate Activity ..... 6

1. Cases Of Contracts Or Conduct That Do Not Affect Interstate Commerce ..... 7

2. Plaintiff Smith's Agreement With Defendant Does Not Involve Interstate Commerce, As His Local Library Is Solely Involved In Intrastate Activities ..... 9

II. DEFENDANT'S ARBITRATION CLAUSE AND CLASS ACTION WAIVER ARE UNCONSCIONABLE UNDER CALIFORNIA LAW, WHICH APPLY IN THE ABSENCE OF THE FAA ..... 11

A. Defendant's Arbitration Clause And Class Action Waiver Are Unconscionable Pursuant to Discover Bank ..... 11

B. Defendant's Forum Selection Clause Is Void ..... 12

CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*907 Whitehead Street, Inc. v. Sec. of U.S. Dept. of Agriculture*, 701 F.3d 1345 (11th Cir. 2012) .......... 14

*Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265 (1995) .......... 10

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853 (1982) .......... 5

*Bradley v. Brentwood Homes, Inc.*, 398 S.C. 447 (2012) .......... 10

*Brown v. Louisiana*, 383 U.S. 131 (1966) .......... 5

*Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564 (1997) .......... 5

*Capriole v. Uber Techs., Inc.*, 7 F.4th 854 (9th Cir. 2021) .......... 12

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) .......... 4

*Cunningham v. Lyft, Inc.*, 17 F.4th 244 (1st Cir. 2021) .......... 12

*Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005) .......... 2, 15, 16

*Evenskaas v. California Transit, Inc.*, 81 Cal. App. 5th 285 (2022) .......... 4

*Hachette Book Grp., Inc. v. Internet Archive*, 664 F. Supp. 3d 370 (S.D.N.Y. 2023) .......... 7

*Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024) .......... 2, 15, 16

*Heckman v. Live Nation Entertainment, Inc.*, 686 F. Supp. 3d 939 (C.D. Cal. 2023) .......... 16

*Hicks Unlimited, Inc. v. UniFirst Corp.*, 439 S.C. 623 (2023) .......... 11, 12, 13

*Jackson v. Amazon.com, Inc.*,
559 F. Supp. 3d 1132 (S.D. Cal. 2021) ........ 15

*Kin Wah Kung v. Experian Info. Sols., Inc.*,
2018 WL 2021495 (N.D. Cal. May 1, 2018) ........ 9

*Kreimer v. Bureau of Police for Town of Morristown*,
958 F.2d 1242 (3d Cir. 1992) ........ 6

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012) ........ 9, 14

*PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*,
711 F. Supp. 3d 1325 (N.D. Fla. 2024) ........ 6

*People v. Hsu*,
82 Cal. App. 4th 976 (2000) ........ 14

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ........ 17

*Riebe v. Juergensmeyer & Assocs.*,
979 F. Supp. 1218 (N.D. Ill. 1997) ........ 5, 6, 7

*Rittmann v. Amazon.com, Inc.*,
971 F.3d 904 (9th Cir. 2020) ........ 12, 13

*Singh v. Uber Techs., Inc.*,
67 F.4th 550 (3d Cir. 2019) ........ 12, 13

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) ........ 10

*Southwest Airlines Co. v. Saxon*,
596 U.S. 450 (2022) ........ 12, 13

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*,
2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) ........ 16

*Suski v. Marden-Kane, Inc.*,
2022 WL 3974259 (N.D. Cal. Aug. 31, 2022) ........ 16

*United States v. Am. Libr. Ass'n, Inc.*,
539 U.S. 194 (2003) ........ 6, 7, 14

*United States v. Ballinger*,
395 F.3d 1218 (11th Cir. 2005) ........ 11

*United States v. Lopez*,
514 U.S. 549 (1995) ........ 8, 11, 13

*United States v. Morrison*,
529 U.S. 598 (2000) .......... 11

*United States v. Sutcliffe*,
505 F.3d 944 (9th Cir. 2007) .......... 14

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) .......... 10

*Wallace v. Grubhub Holdings, Inc.*,
970 F.3d 798 (7th Cir. 2020) .......... 12, 13, 15

**STATUTES**

9 U.S.C. § 1 .......... 3, 12

9 U.S.C. § 2 .......... 3, 10

9 U.S.C. § 4 .......... 2, 3

Cal. Civ. Code § 1798.90 .......... 1

Cal. Civ. Code § 1799.208 .......... 16, 17

Cal. Civ. Code § 1799.3 .......... 2

Cal. Gov. Code § 7927.105 .......... 1

Cal. Penal Code § 631 .......... 2

Cal. Penal Code § 632 .......... 2

**OTHER AUTHORITIES**

S. Rep. No. 106–141 .......... 14

Plaintiff Kevin Smith hereby submits this opposition to Defendant's Motion to Compel Arbitration (ECF No. 26) ("MTC"). Defendant has not yet moved to compel Plaintiff Lyly Tran to arbitration, as she was added to the case by the First Amended Complaint (ECF No. 33) ("FAC"). If Defendant does so, Ms. Tran will submit an opposition as well.

## INTRODUCTION

Plaintiff Kevin Smith is a California resident and a patron of the San Francisco Public Library. FAC ¶¶ 6-7. Only California residents are eligible for patronage to the San Francisco Public Library. *Id.* ¶ 50. As part of this library patronage, Plaintiff Smith browses for and accesses e-books and audiobooks. *Id.* ¶ 7. The library partners with Defendant Midwest Tape, LLC d/b/a Hoopla ("Defendant" or "Hoopla") to deliver these digital materials to patrons. *Id.* ¶ 26. Patrons are instructed to make an account with Hoopla to access the materials. *Id.* ¶ 45. While Hoopla account creation is free, users must provide their valid library card information and email address, and only those patrons of a participating library are eligible for a Hoopla account. *Id.* ¶¶ 47-48.

Unbeknownst to Plaintiff Smith, Hoopla uses third party tracking technologies provided by Meta Platforms, Inc. ("Meta") and Google, LLC ("Google") to track his use of the Hoopla website. FAC ¶¶ 2, 52-53. These technologies intercepted and disclosed, to Meta and Google, every search Plaintiff Smith performed and every e-book or audiobook Plaintiff Smith borrowed. *Id.* ¶¶ 8-14. In other words, Hoopla disclosed to Meta and Google what materials Plaintiff Smith was browsing for and reading. This conduct rightfully shocks the conscience as library records are legally confidential in every state, including California. *See*, *e.g.*, California Patron Use Records Act, Cal. Gov. Code § 7927.105; California Reader Privacy Act, Cal. Civ. Code § 1798.90; *Code of Ethics of the American Library Association*, Article III ("We protect each library user's right to privacy and confidentiality with respect to information sought or received and resources consulted, borrowed acquired, or transmitted.") (2008).

To remedy this wrong, Plaintiff Smith brought this putative class action under California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631-632, and the California Constitution's

right to privacy.[1] Hoopla's MTC does not deny the alleged conduct. Rather, it argues that Plaintiff Smith waived his right to bring this case in court, waived his right to bring a putative class action, and instead agreed to limit any dispute to single-plaintiff arbitration. California courts have refused to enforce these types of "single-plaintiff only arbitration" agreements for decades as against public policy. *See Discover Bank v. Superior Court*, 36 Cal.4th 148, 162-63 (2005); *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 689-90 (9th Cir. 2024). Implicitly recognizing this, Hoopla argues that the Federal Arbitration Act, 9 U.S.C. § 4 (the "FAA") applies and allows it to compel arbitration. But the FAA, while broad, is not all-encompassing. The Act only applies to transactions "involving commerce," and, because it is an act of Congress, defines commerce as limited to "commerce among the several States." *Id.* §§ 1-2.

As Plaintiff Smith argues below, this case is not within the FAA's reach. This case does not "involve commerce" at all, as accessing materials through one's local public library is not a commercial transaction. And even if "commerce" were implicated, it is certainly not *interstate* commerce, as library patronage is limited to California residents. Simply put, Congress's commerce power is limited. While a public library may pay for the books on its shelves and while those books may be bound using paper and glue from other states, the underlying act—borrowing a book from the public library—is not interstate commerce. The same logic applies here. Therefore, the FAA does not apply to the instant agreement. Instead, California law governs, under which Hoopla's MTC must be denied.

## ARGUMENT

### I. THE FEDERAL ARBITRATION ACT DOES NOT APPLY TO THE HOOPLA AGREEMENT

Defendant argues that it "is entitled to compel arbitration … under Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4." MTC at 1. This is incorrect. The FAA applies to transactions "involving commerce." 9 U.S.C. § 2. "Commerce" is defined as:

> commerce *among the several States* or with foreign nations, or in any Territory of the United States or in the District of Columbia, or

[1] Plaintiff Tran also brings a claim under California's Video Privacy Protection Act, Cal. Civ. Code § 1799.3 with respect to video materials.

> between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation

9 U.S.C. § 1 (emphasis added). In other words, the FAA only pertains to contracts that are "commercial" in nature, and it also only pertains to contracts that involve an "interstate" component. Thus, "the FAA's reach … coincides with that of the commerce clause." *Evenskaas v. California Transit, Inc.*, 81 Cal. App. 5th 285, 292 (2022) (cleaned up). So, unless "the aggregate [of] the economic activity in question would represent a general practice subject to federal control," the FAA does not apply. *Id.* at 294 (cleaned up). And it is Defendant's burden to demonstrate the FAA applies. *Id.* at 292.

Here, Defendant has not and cannot show that the Hoopla Terms govern a commercial transaction between Plaintiff and Defendant, nor that library patrons' borrowing of digital library materials affects or involves *interstate* commerce. Thus, the FAA cannot apply to Defendant's Terms and Conditions of Use. Instead, California law applies, under which Defendant's arbitration clause is invalid and unenforceable.

### A. The Hoopla Terms Do Not Concern A Transaction Involving Or Affecting Commerce

The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). But as courts have held, "[a] library is not a center of commerce." *Riebe v. Juergensmeyer & Assocs.*, 979 F. Supp. 1218, 1221 (N.D. Ill. 1997) (citing *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 868 (1982)); *see also Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 605 (1997) (Scalia, J., dissenting) ("[L]ibraries, orphanages, homeless shelters, and refuges for battered women … are traditional governmental functions, far removed from commercial activity and utterly unconnected to any genuine private market."). By extension, a local library service that loans reading and audiovisual materials for free is not conducting commercial activity and thus does not fall within the FAA's scope.

The judicial system has long revered the public library as "a place dedicated to quiet, to knowledge, and to beauty." *Brown v. Louisiana*, 383 U.S. 131, 142 (1966). The purpose of a library is "to aid in the acquisition of knowledge through reading, writing and quiet contemplation." *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1261 (3d Cir. 1992); *see also United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 203 (2003) ("Public libraries pursue the worthy missions of facilitating learning and cultural enrichment."); *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 711 F. Supp. 3d 1325, 1331 (N.D. Fla. 2024) ("the traditional purpose of a library is to provide information on a broad range of subjects and viewpoints"). The purpose of a library is not economic activity.

Under the Fair Debt Collection Practices Act ("FDCPA"), one of the only statutes where the function of public libraries has been analyzed, courts have held that "public libraries do not engage in business transactions with patrons—they lend public property to patrons, free of charge." *Riebe*, 979 F. Supp. at 1221. Because the "the borrowing of a library book is not the type of conduct that the FDCPA considers a transaction," the subsequent "obligation to pay for failure to return the book d[oes] not create a 'debt' under the FDCPA.'" *Id.* This reasoning has been found to apply to digital library services. *See Hachette Book Grp., Inc. v. Internet Archive*, 664 F. Supp. 3d 370, 384 (S.D.N.Y. 2023), *aff'd*, 115 F.4th 163 (2d Cir. 2024) (finding a "patron's private reading of an ebook provided by [the digital library service wa]s noncommercial" in a copyright infringement case concerning a digital library scanning and disseminating books it did not own rights to). As the Supreme Court has found, a public library "provides Internet access[] … for the same reasons it offers other library resources: to facilitate research, learning, and recreational pursuits by furnishing materials of requisite and appropriate quality." *Am. Libr. Ass'n, Inc.*, 539 U.S. at 206.

Here, Plaintiff Smith is a patron of the San Francisco Public Library, and is only able to access Defendant's digital catalog through his local library membership. *See* FAC ¶¶ 47-51; Smith Decl. ¶ 2. Plaintiff Smith borrows library materials from the San Francisco Public Library, including digital materials from the Hoopla catalog offered through the library. *See* Smith Decl. ¶ 3. Without a library card to a California public library, Plaintiff Smith could not have accessed Hoopla's digital offerings. *See* FAC ¶¶ 47-51; Smith Decl. ¶ 2. Plaintiff Smith's only benefit from accessing digital

Hoopla materials is related to his own personal "research, learning, and recreational pursuits." *Am. Libr. Ass'n, Inc.*, 539 U.S. at 206.

Further, Defendant's own Terms and Conditions of Use ("Hoopla Terms"), which it argues are binding, fail to mention any transaction between Plaintiff Smith (and Class Members) and Defendant. *See* Merritt Decl. Ex. A. Instead, the Hoopla Terms state that users "must be an authorized Library Patron to access Content on the [Hoopla] Platform … The Platform offers a wide variety of Content to our participating Libraries, which may curate the specific Content that is made available to their Patrons." *Id.* Ex. A § I.

Nowhere in the Hoopla Terms does Defendant acknowledge the existence of any transaction—much less a commercial transaction—between Plaintiff Smith (and Class Members) and Defendant. Indeed, the only time the word "transaction" appears in the Hoopla Terms is in Section 14 "Miscellaneous," in the sentence stating: "[y]ou agree that these Terms may be assigned by Midwest Tape, in our sole discretion, to a third party in the event of a business transaction involving ownership of the Platform or a change in ownership or control of Midwest Tape." *See* Merritt Decl. Ex. A § 14. Rather, the Hoopla Terms explicitly contemplate a non-commercial relationship:

> If you are an authorized Library Patron, you may borrow and view the Content during the designated loan period *for your own, personal, non-commercial use only* ("Allowed Use") and, during that limited loan period only, Midwest Tape and/or its Content providers grant you a non-assignable, non-transferable, limited license to access the Content in digital form through the Platform and *for your personal, noncommercial, entertainment use*. The Content may be made accessible to you in accordance with crb established by your Library.
>
> …
>
> You represent, warrant, and agree that you are using the Platform for your own personal, *noncommercial*, entertainment use…

*Id.* Ex. A § 2 (emphases added). Thus, the Hoopla Terms have "nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *United States v. Lopez*, 514 U.S. 549, 561 (1995) (finding that statute regulating "firearm possession" in local school zones did not "affect[] interstate commerce").

At most, Defendant's agreements with the Plaintiff Smith's *library* could constitute commercial activity. Notwithstanding Defendant has not proffered facts supporting this—as is Defendant's burden—Plaintiff Smith and Class Members' only means of accessing Defendant's digital catalog is through their respective library memberships, meaning their access is limited by their respective libraries' agreements with Defendant. Therefore, Plaintiff Smith has not conducted any economic activity through accessing the Website. *See* Smith Decl. ¶¶ 4-5. Indeed, "[t]he Commerce Clause is not a general license to regulate an individual from cradle to grave, simply because he will predictably engage in particular transactions." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 557 (2012).

In sum, Plaintiff Smith's alleged agreement with Defendant is not "commercial" in nature because libraries are not institutions engaged in "commerce." Thus, the FAA cannot apply.

**B. The Hoopla Terms Do Not Involve Or Affect Interstate Activity**

Even if the agreement here involves "commerce" (and it does not), Defendant has not met its burden to prove the Hoopla Terms govern an agreement concerning interstate activity, meaning the FAA does not apply.

As noted above, "the FAA applies if in the aggregate the economic activity in question would represent a general practice subject to federal control. Only that general practice need bear on interstate commerce in a substantial way." *Kin Wah Kung v. Experian Info. Sols., Inc.*, 2018 WL 2021495, at *2 (N.D. Cal. May 1, 2018) (cleaned up); *see also Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 274 (1995) ("[T]his Court has previously described the Act's reach expansively as coinciding with that of the Commerce Clause."). However, the FAA does not "reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989); *Bradley v. Brentwood Homes, Inc.*, 398 S.C. 447, 455 (2012) (same); *Southland Corp. v. Keating*, 465 U.S. 1, 14-15 (1984) ("We therefore view the 'involving commerce' requirement in [FAA] § 2, not as an inexplicable limitation on the power of the federal courts, but as a necessary qualification on a statute intended to apply in state and federal courts.").

The Supreme Court has outlined three categories of interstate commerce: (i) channels of interstate commerce, which are "the interstate transportation routes through which persons and goods move," and include "highways, … railroads, navigable waters, and airspace, … as well as telecommunications networks" (*United States v. Morrison*, 529 U.S. 598, 613 n.5 (2000); *United States v. Ballinger*, 395 F.3d 1218, 1225-26 (11th Cir. 2005) (collecting cases)); (ii) instrumentalities of interstate commerce, which are the "people and things themselves moving in commerce, including automobiles, airplanes, boats, and shipments of goods" (*Ballinger*, 395 F.3d at 1226); and (iii) activities substantially related to interstate commerce (*Lopez*, 514 U.S. at 558-59 (1995)). None are applicable to govern what Plaintiff Smith is doing here: borrowing reading and video materials from his public library through a library service.

*1. Cases Of Contracts Or Conduct That Do Not Affect Interstate Commerce*

A few cases should guide this Court's analysis. *First*, in *Lopez*, 514 U.S. at 551, "Congress made it a federal offense for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." (Cleaned up). The respondent—who was a student carrying a firearm in a school zone—challenged the law as "exceed[ing] Congress' power to legislate under the Commerce Clause." *Id.* at 551-52. The Supreme Court agreed, noting "[t]he possession of a gun in a local school zone is in no sense an economic activity that might … substantially affect any sort of interstate commerce." *Id.* at 567. Instead, the "[r]espondent was a local student at a local school; there is no indication that he had recently moved in interstate commerce, and there is no requirement that his possession of the firearm have any concrete tie to interstate commerce." *Id*.

*Second*, in *Hicks Unlimited, Inc. v. UniFirst Corp.*, 439 S.C. 623, 633 (2023), "UniFirst shipped the uniforms from Kentucky to South Carolina, and Hick's payments were made to and deposited by UniFirst in Massachusetts, the site of UniFirst's headquarters and board of directors." The Supreme Court of South Carolina found "the contract between Hicks and UniFirst did not involve interstate commerce." *Id.* at 634. The court focused on the fact that, other than the contract being "between a Massachusetts company and a South Carolina company," "[t]here is no other sign

the contract was to be performed using instrumentalities or channels of interstate commerce, or that the uniform supply involved any thing or matter *located beyond South Carolina's borders*." *Id.* (emphasis added).

*Last*, several cases have addressed whether transportation or delivery workers fall within the FAA's exception for transportation workers "engaged in … interstate commerce." 9 U.S.C. § 1. On one side of the equation, in *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 463 (2022), the Supreme Court found that an employee who "frequently loads and unloads cargo on and off airplanes that travel in interstate commerce … belongs to a class of workers engaged in foreign or interstate commerce." (Cleaned up). This was so because "airline employees who physically load and unload cargo on and off planes traveling in interstate commerce are, as a practical matter, part of the interstate transportation of goods." *Id.* at 457. The same was true of "last mile" Amazon delivery drivers who "pick up packages that have been distributed to Amazon warehouses, certainly across state lines, and transport them for the last leg of the shipment to their destination." *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 915 (9th Cir. 2020).

On the other side of the equation, food delivery drivers for local restaurants are not transportation workers "engaged in interstate commerce" because they are not "moving those goods across state or national borders." *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th Cir. 2020) (Coney Barrett, J.). It did not matter if "a piece of dessert chocolate may have traveled all the way from Switzerland" before being delivered. *Id.* Similarly, "Uber drivers [] in the business of providing local rides that sometimes—as a happenstance of geography—cross state borders" were not workers "engaged in interstate commerce." *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 560 (3d Cir. 2019). Instead, Uber drivers "serve[d] local communities." *Id.* at 562; *see also Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 863 (9th Cir. 2021) (concluding same); *Cunningham v. Lyft, Inc.*, 17 F.4th 244, 253 (1st Cir. 2021) ("[W]e conclude that Lyft drivers … are among a class of workers engaged primarily in local intrastate transportation, some of whom infrequently find themselves crossing state lines.").

To summarize these "transportation workers" cases, workers who performed the last step of delivering goods that had traveled across state lines were "engaged in interstate commerce." *Saxon*,

596 U.S. at 463; *Rittmann*, 971 F.3d at 915. But drivers who serviced local restaurants or provided transportation within a local community were not. *Wallace*, 970 F.3d at 802; *Singh*, 67 F.4th at 562. As explained below, local libraries fall on the *Wallace*, *Singh*, and *Cunningham* side of the equation, and are also similar to the local activities at issue in *Lopez* and *Hicks*. Thus, Plaintiff Smith's agreement is not one affecting "interstate commerce."

#### 2. *Plaintiff Smith's Agreement With Defendant Does Not Involve Interstate Commerce, As His Local Library Is Solely Involved In Intrastate Activities*

Local libraries providing reading and video materials to their patrons in their community "is not an activity that is, in general, subject to federal control," but rather, "serve[s] local communities." *Hicks*, 439 S.C. at 634; *Singh*, 67 F.4th at 562. The San Francisco Public Library ("SFPL"), of which Plaintiff Smith is a patron, is run by a "seven-member commission appointed by the Mayor of San Francisco."[2] Fraietta Decl. ¶ 3; *see also Lopez*, 514 U.S. at 551 ("Respondent was a local student at a local school…"). The SFPL has an entire section dedicated to helping library patrons set up their associated Hoopla accounts. Fraietta Decl. ¶ 4.[3] If SFPL patrons want to access Defendant's digital service from a web browser, they can search the SFPL catalog on the web browser and, if Defendant offers the material they are searching for, they click a link to access the hoopla web browser from the SFPL web browser. *See* Smith Decl. ¶¶ 3-5. Defendant itself even acknowledges that Plaintiff Smith was only able to "register for and access the hoopla Website *by virtue of his holding an account with a participating library*." MTC at 6 (emphasis added). And Plaintiff Smith and other users are only able access content "in accordance with limitations established by your Library." Merritt Decl. Ex. A § II.

Further, local libraries are not soliciting relationships with consumers across state lines; they expressly serve a localized market. For instance, the SFPL hosts in-person events at its San Francisco location[4] and presents exhibits examining San Francisco's history and culture, such as a celebration

---

[2] https://sfpl.org/about-us/library-commission

[3] https://sfpl.libanswers.com/faq/129915

[4] https://sfpl.org/events

of the Tenderloin neighborhood[5] and a look at San Francisco's impact on skateboarding culture.[6] This is distinct from cases where an ostensibly local museum or institution "solicit[s] out-of-state tourists" and "invites and receives thousands of admission-paying visitors from beyond" the community. *907 Whitehead Street, Inc. v. Sec. of U.S. Dept. of Agriculture*, 701 F.3d 1345, 1351 (11th Cir. 2012) (finding museum's exhibition affected interstate commerce because "The Museum invites and receives thousands of admission-paying visitors from beyond Florida, many of whom are drawn by the Museum's reputation for and purposeful marketing of the Hemingway cats").

It is true that courts have generally found use of the Internet to constitute interstate commerce because "the Internet is an instrumentality and channel of interstate commerce." *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007). However, there must be a limit to congressional reach even on the Internet. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 554 (2012) ("[O]ur cases have always recognized that the power to regulate commerce, though broad indeed, has limits.") (cleaned up). With respect to libraries, at least, both the Supreme Court and "Congress [have] recognized[] [t]he Internet is simply another method for making information available in a school or library. It is no more than a technological extension of the book stack." *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 207 (2003) (citing S. Rep. No. 106–141 at 7 (1999)). And California courts have long accepted that "[t]he Internet is undeniably an incident of interstate commerce, but the fact that communication thereby can affect interstate commerce does not automatically cause a state statute in which Internet use is an element to burden interstate commerce." *People v. Hsu*, 82 Cal. App. 4th 976, 983 (2000) (in case attacking validity of state statute under dormant Commerce Clause).

An example is enlightening. A pencil is manufactured from materials that are sourced in interstate commerce, and said pencil is then transported in the channels of interstate commerce across state lines to its final location of sale, ostensibly to a location in another state. Yet no court would agree that a library patron borrowing and using a pencil offered at their local library would constitute

[5] https://sfpl.org/exhibits/2024/04/19/we-heart-tenderloin

[6] https://sfpl.org/exhibits/2025/02/13/skateboarding-san-francisco-concrete-community-continuity.

interstate commerce. *See*, *e.g.*, *Wallace*, 970 F.3d at 802 (finding interstate commerce worker exception inapplicable even though "[a] package of potato chips, for instance, may travel across several states before landing in a meal prepared by a local restaurant and delivered by a Grubhub driver").

The same is true of library patrons accessing Defendant's digital catalog offered through their local library. The fact that the content may be loaded on a consumer's mobile phone or desktop using cables or signals that cross state lines does not diminish the local character of the content itself—as it comes from the consumer's local library.

Thus, the Hoopla Terms are not a contract substantially affecting interstate commerce because they are an agreement to view content from Plaintiff Smith's local library, which serves a local community and does not cater to out-of-state individuals. Accordingly, the FAA is inapplicable to the Hoopla Terms.

## II. DEFENDANT'S ARBITRATION CLAUSE AND CLASS ACTION WAIVER ARE UNCONSCIONABLE UNDER CALIFORNIA LAW, WHICH APPLY IN THE ABSENCE OF THE FAA

### A. Defendant's Arbitration Clause And Class Action Waiver Are Unconscionable Pursuant to Discover Bank

Because the FAA does not apply to the Hoopla Terms, California state law governs. *See Jackson v. Amazon.com, Inc.*, 559 F. Supp. 3d 1132, 1142-43 (S.D. Cal. 2021), *aff'd*, 65 F.4th 1093 (9th Cir. 2023) (applying "California state law to determine whether a valid agreement to arbitrate exists" "in the absence of the FAA" because "[w]here there is no choice-of-law provision, the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state.") (cleaned up).[7] "Because the FAA does not apply, the rule of *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005), governs th[is] case." *Heckman*, 120 F.4th at 689. And under *Discover Bank*, Defendant's arbitration clause and class action waiver are unconscionable.

As the Ninth Circuit recently summarized:

> *Discover Bank* held that class waivers are unenforceable when contained in a "consumer contract of adhesion," when small damage disputes could predictably arise between the parties, and when the

[7] Defendant claims the FAA governs the Hoopla Terms. *See* MTC at 5.

> "party with the superior bargaining power" is alleged to have "carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money."

*Heckman*, 120 F.4th at 690 (quoting *Discover Bank*, 36 Cal.4th at 162-163).

*Discover Bank*'s rule applies here. The Hoopla Terms constitute a "contract of adhesion drafted by a party that has superior bargaining power," as Defendant—the company controlling access to its digital catalog and therefore the party with superior bargaining power—drafted the Hoopla Terms, which are a standardized agreement offered on a take-it-or-leave-it basis. *Suski v. Marden-Kane, Inc.*, 2022 WL 3974259, at *4 (N.D. Cal. Aug. 31, 2022); *Heckman v. Live Nation Entertainment, Inc.*, 686 F. Supp. 3d 939, 952 (C.D. Cal. 2023), *aff'd*, 120 F.4th 670 (9th Cir. 2024) ("[T]he elements of oppression and surprise are both satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to an inequality of bargaining power that resulted in no real negotiation and an absence of meaningful choice.") (cleaned up).

Further, the Hoopla Terms constitute "a setting in which disputes between the contracting parties predictably involve small amounts of damages." *Suski*¸ 2022 WL 3974259, at *4. And as in *Discover Bank*, Defendant is protected by the knowledge that logically, "relatively few, if any, customers will seek legal remedies [for Defendant's privacy violations], and that any remedies obtained will only pertain to that single customer" absent a class action. *Discover Bank*, 36 Cal. 4th 148, 159-60; *cf. Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271, at *14 (C.D. Cal. Sept. 8, 2014) ("[T]he Court is not persuaded that $5,000 in damages is so clearly sufficient to motivate individual litigation involving complex factual and legal issues as to weigh against class certification.")

Accordingly, *Discover Bank* applies and invalidates Defendant's arbitration clause and class action waiver.

**B. Defendant's Forum Selection Clause Is Void**

Pursuant to Cal. Civ. Code § 1799.208, "[a] seller shall not require a consumer to agree to a provision that would … [r]equire the consumer to arbitrate outside of California a claim arising in California" or "[r]equire the consumer to arbitrate a controversy arising in California under the

substantive law of a state other than California." Moreover, "[a]ny provision of a contract that violates" this rule "is voidable by the consumer, and if a provision is rendered void at the request of the consumer, the matter shall be adjudicated in California and California law shall govern the dispute." *Id.* This statute "applies to a contract entered into, modified, or extended on or after January 1, 2025."

Here, Plaintiff Smith has brought claims under exclusively California law (the CIPA) and Plaintiff Smith's claims arise in California where his information was unlawfully disclosed. *See Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 (3d Cir. 2022) ("NaviStone intercepted Popa's communications at the point where it routed those communications to its own servers. And that was at Popa's browser…"). Yet Defendant's arbitration clause would require Plaintiff Smith to resolve his claims "in Lucas County, Ohio." Merritt Decl. Ex. 1 § XII. Accordingly, under Cal. Civ. Code § 1799.208, this provision is void.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration should be denied.

Dated: March 31, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Emily A. Horne (State Bar No. 347723)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ehorne@bursor.com

*Attorneys for Plaintiffs*