**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com
mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Emily A. Horne (State Bar No. 347723)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ehorne@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN SMITH and LYLY TRAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIDWEST TAPE, LLC d/b/a HOOPLA,<br><br>Defendant. | Case No. 3:24-cv-08805-JD<br><br>**PLAINTIFF TRAN'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date: August 14, 2025<br>Time: 10:00 a.m.<br>Courtroom: 11<br>Judge: Hon. James Donato |

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION ....................................................................................................................1

ARGUMENT ........................................................................................................................2

I. THE FEDERAL ARBITRATION ACT DOES NOT APPLY TO THE HOOPLA TERMS ..............................................................................................................................2

A. The Hoopla Terms Do Not Concern A Transaction Involving Or Affecting Commerce ......................................................................................3

B. The Hoopla Terms Do Not Involve Or Affect Interstate Activity ..............................6

1. Cases Of Contracts Or Conduct That Do Not Affect Interstate Commerce..................................................................................................7

2. Plaintiff Tran's Agreement With Defendant Does Not Involve Interstate Commerce, As Her Local Library Is Solely Involved In Intrastate Activities ...........................................................................9

II. DEFENDANT'S DELEGATION CLAUSE, ARBITRRATION CLAUSE, AND CLASS ACITON WAIVER ARE UNCONSCIONABLE UNDER CALIFORNIA LAW, WHICH APPLIES IN THE ABSENCE OF THE FAA.............................................12

A. The Delegation Clause Is Unconscionable Under *Discover Bank* ...........................12

B. The Arbitration Clause And Class Action Waiver Are Unconscionable Under *Discover Bank* ......................................................................................14

III. DEFENDANT'S FORUM SELECTION CLAUSE IS VOID .............................................14

CONCLUSION ....................................................................................................................14

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*907 Whitehead Street, Inc. v. Sec. of U.S. Dept. of Agriculture*, 701 F.3d 1345 (11th Cir. 2012) ..... 14

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) ..... 10

*Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023) ..... 16

*Board of Educ. v. Pico*, 457 U.S. 853 (1982) ..... 5

*Bradley v. Brentwood Homes, Inc.*, 398 S.C. 447 (2012) ..... 11

*Brown v. Louisiana*, 383 U.S. 131 (1966) ..... 5

*Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564 (1997) ..... 5

*Capriole v. Uber Techs., Inc.*, 7 F.4th 854 (9th Cir. 2021) ..... 12

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) ..... 4

*Cunningham v. Lyft, Inc.*, 17 F.4th 244 (1st Cir. 2021) ..... 12

*Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005) ..... 2, 16, 17

*Evenskaas v. California Transit, Inc.*, 81 Cal. App. 5th 285 (2022) ..... 3, 4

*Hachette Book Grp., Inc. v. Internet Archive*, 664 F. Supp. 3d 370 (S.D.N.Y. 2023) ..... 7

*Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024) ..... 2, 16, 17, 18

*Heckman v. Live Nation Entertainment, Inc.*, 686 F. Supp. 3d 939 (C.D. Cal. 2023) ..... 17

*Hicks Unlimited, Inc. v. UniFirst Corp.*,
439 S.C. 623 (2023)............ 11, 12, 13

*Jackson v. Amazon.com, Inc.*,
559 F. Supp. 3d 1132 (S.D. Cal. 2021)............ 16

*Kasper v. NFHS Network, LLC*,
2024 WL 4859082 (N.D. Cal. Nov. 20, 2024)............ 15

*Kin Wah Kung v. Experian Info. Sols., Inc.*,
2018 WL 2021495 (N.D. Cal. May 1, 2018)............ 10

*Kreimer v. Bureau of Police for Town of Morristown*,
958 F.2d 1242 (3d Cir. 1992)............ 5

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012)............ 9, 14

*PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*,
711 F. Supp. 3d 1325 (N.D. Fla. 2024)............ 6

*People v. Hsu*,
82 Cal. App. 4th 976 (2000)............ 15

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022)............ 18

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010)............ 16

*Riebe v. Juergensmeyer & Assocs.*,
979 F. Supp. 1218 (N.D. Ill. 1997)............ 4, 6

*Rittmann v. Amazon.com, Inc.*,
971 F.3d 904 (9th Cir. 2020)............ 12, 13

*Singh v. Uber Techs., Inc.*,
67 F.4th 550 (3d Cir. 2023)............ 12, 13

*Southland Corp. v. Keating*,
465 U.S. 1 (1984)............ 11

*Southwest Airlines Co. v. Saxon*,
596 U.S. 450 (2022)............ 12, 13

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*,
2014 WL 4627271 (C.D. Cal. Sept. 8, 2014)............ 17

*Suski v. Marden-Kane, Inc.*,
2022 WL 3974259 (N.D. Cal. Aug. 31, 2022)............ 17

*United States v. Am. Libr. Ass'n, Inc.*,
539 U.S. 194 (2003) ........ 6, 7, 14

*United States v. Ballinger*,
395 F.3d 1218 (11th Cir. 2005) ........ 11

*United States v. Lopez*,
514 U.S. 549 (1995) ........ 8, 11, 13

*United States v. Morrison*,
529 U.S. 598 (2000) ........ 11

*United States v. Sutcliffe*,
505 F.3d 944 (9th Cir. 2007) ........ 14

*Valencia v. Smyth*,
185 Cal. App. 4th 153 (2010) ........ 9

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) ........ 10

*Wallace v. Grubhub Holdings, Inc.*,
970 F.3d 798 (7th Cir. 2020) ........ 12, 13, 15

**STATUTES**

9 U.S.C. § 1 ........ 3, 12

9 U.S.C. § 2 ........ 3

9 U.S.C. § 4 ........ 2, 3

18 U.S.C. § 2710(a)(4) ........ 15

Cal. Civ. Code § 1798.90 ........ 1

Cal. Civ. Code § 1799 ........ 2, 18

Cal. Gov. Code § 7927.105 ........ 1

Cal. Penal Code § 631 ........ 2

Cal. Penal Code § 632 ........ 2

U.S. CONST. art. I, § 8, cl. 3 ........ 9

**OTHER AUTHORITIES**

S. Rep. No. 106–141 ........ 14

Plaintiff Lyly Tran hereby submits this opposition to Defendant's Motion to Compel Arbitration (ECF No. 43) ("MTC").

**INTRODUCTION**

Plaintiff Lyly Tran is a California resident and a patron of the Los Angeles Public Library. FAC ¶¶ 17. Only California residents are eligible for patronage to the Los Angeles Public Library. *Id.* ¶ 50. As part of this library patronage, Plaintiff Tran browses for and accesses library materials. *Id.* ¶ 17. The library partners with Defendant Midwest Tape, LLC d/b/a Hoopla ("Defendant" or "Hoopla") to deliver these digital materials to patrons. *Id.* ¶¶ 44-49. Patrons are instructed to make an account with Hoopla to access the materials. *Id.* ¶¶ 45, 48. While Hoopla account creation is free, users must provide their valid library card information and email address, and only those patrons of a participating library are eligible for a Hoopla account. *Id.* ¶¶ 48-49.

Unbeknownst to Plaintiff Tran, Hoopla uses third party tracking technologies provided by Meta Platforms, Inc. ("Meta") and Google, LLC ("Google") to track her use of the Hoopla website. FAC ¶¶ 2, 52-53. These technologies intercepted and disclosed, to Meta and Google, every search Plaintiff Tran performed and every library item that Plaintiff Tran borrowed. *Id.* ¶¶ 18-22. In other words, Hoopla disclosed to Meta and Google what materials Plaintiff Tran was browsing for, viewing, and accessing. This conduct rightfully shocks the conscience as library records are legally confidential in every state, including California. *See, e.g.*, California Patron Use Records Act, Cal. Gov. Code § 7927.105; California Reader Privacy Act, Cal. Civ. Code § 1798.90; *Code of Ethics of the American Library Association*, Article III ("We protect each library user's right to privacy and confidentiality with respect to information sought or received and resources consulted, borrowed acquired, or transmitted.") (2008).

To remedy this wrong, Plaintiff Tran brought this putative class action under California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631-632, Cal. Civ. Code § 1799.3, and the California Constitution's right to privacy. Hoopla's MTC does not deny the alleged conduct. Rather, it argues that Plaintiff Tran waived her right to bring this case in court, waived her right to bring a putative class action, and instead agreed to limit any dispute to single-plaintiff arbitration. California courts have refused to enforce these types of "single-plaintiff only arbitration" agreements for

decades as against public policy. *See Discover Bank v. Superior Court*, 36 Cal.4th 148, 162-63 (2005); *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 689-90 (9th Cir. 2024). Implicitly recognizing this, Hoopla argues that the Federal Arbitration Act, 9 U.S.C. § 4 (the "FAA") applies and allows it to compel arbitration. But the FAA, while broad, is not all-encompassing. The Act only applies to transactions "involving commerce," and, because it is an act of Congress, defines commerce as limited to "commerce among the several States." *Id.* §§ 1-2.

As Plaintiff Tran argues below, this case is not within the FAA's reach. This case does not "involve commerce" at all, as accessing materials through one's local public library is not a commercial transaction. And even if "commerce" were implicated, it is certainly not *interstate* commerce, as library patronage is limited to California residents. Simply put, Congress's commerce power is limited. While a public library may pay for the books on its shelves and while those books may be bound using paper and glue from other states, the underlying act—borrowing a book or movie from the public library—is not interstate commerce. The same logic applies here. Therefore, the FAA does not apply to the instant agreement. Instead, California law governs, under which Hoopla's MTC must be denied.

## <u>ARGUMENT</u>

### I. THE FEDERAL ARBITRATION ACT DOES NOT APPLY TO THE HOOPLA TERMS

Defendant argues that it "is entitled to compel arbitration … under Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4." MTC at 1. This is incorrect. The FAA applies to transactions "involving commerce." 9 U.S.C. § 2. "Commerce" is defined as:

> commerce *among the several States* or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation

9 U.S.C. § 1 (emphasis added). In other words, the FAA only pertains to contracts that are "commercial" in nature, and it also only pertains to contracts that involve an "interstate" component. Thus, "the FAA's reach … coincides with that of the commerce clause." *Evenskaas v. California Transit, Inc.*, 81 Cal. App. 5th 285, 292 (2022) (cleaned up). So, unless "the aggregate [of] the

economic activity in question would represent a general practice subject to federal control," the FAA does not apply. *Id.* at 294 (cleaned up). And it is Defendant's burden to demonstrate the FAA applies. *Id.* at 292.

Here, Defendant has not and cannot show that the Hoopla Terms govern a commercial transaction between Plaintiff and Defendant, nor that library patrons' borrowing of digital library materials affects or involves *interstate* commerce. Thus, the FAA cannot apply to Defendant's Terms and Conditions of Use. Instead, California law applies, under which Defendant's arbitration clause is invalid and unenforceable.

### A. The Hoopla Terms Do Not Concern A Transaction Involving Or Affecting Commerce

The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). But as courts have held, "[a] library is not a center of commerce." *Riebe v. Juergensmeyer & Assocs.*, 979 F. Supp. 1218, 1221 (N.D. Ill. 1997) (citing *Board of Educ. v. Pico*, 457 U.S. 853, 868 (1982)); *see also Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 605 (1997) (Scalia, J., dissenting) ("[L]ibraries, orphanages, homeless shelters, and refuges for battered women … are traditional governmental functions, far removed from commercial activity and utterly unconnected to any genuine private market."). By extension, a local library service that loans reading and audiovisual materials for free is not conducting commercial activity and thus does not fall within the FAA's scope.

The judicial system has long revered the public library as "a place dedicated to quiet, to knowledge, and to beauty." *Brown v. Louisiana*, 383 U.S. 131, 142 (1966). The purpose of a library is "to aid in the acquisition of knowledge through reading, writing and quiet contemplation." *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1261 (3d Cir. 1992); *see also United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 203 (2003) ("Public libraries pursue the worthy missions of facilitating learning and cultural enrichment."); *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 711 F. Supp. 3d 1325, 1331 (N.D. Fla. 2024) ("the traditional purpose of a library is to

provide information on a broad range of subjects and viewpoints"). The purpose of a library is not economic activity.

Under the Fair Debt Collection Practices Act ("FDCPA"), one of the only statutes where the function of public libraries has been analyzed, courts have held that "public libraries do not engage in business transactions with patrons—they lend public property to patrons, free of charge." *Riebe*, 979 F. Supp. at 1221. Because the "the borrowing of a library book is not the type of conduct that the FDCPA considers a transaction," the subsequent "obligation to pay for failure to return the book d[oes] not create a 'debt' under the FDCPA.'" *Id.* This reasoning has been found to apply to digital library services. *See Hachette Book Grp., Inc. v. Internet Archive*, 664 F. Supp. 3d 370, 384 (S.D.N.Y. 2023), *aff'd*, 115 F.4th 163 (2d Cir. 2024) (finding a "patron's private reading of an ebook provided by [the digital library service wa]s noncommercial" in a copyright infringement case concerning a digital library scanning and disseminating books it did not own rights to). As the Supreme Court has found, a public library "provides Internet access[] … for the same reasons it offers other library resources: to facilitate research, learning, and recreational pursuits by furnishing materials of requisite and appropriate quality." *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 206 (2003).

Here, Plaintiff Tran is a patron of the Los Angeles Public Library, and she is only able to access Defendant's digital catalog through her local library membership. *See* FAC ¶¶ 47-51; Tran Decl. ¶ 2. Plaintiff Tran borrows library materials from the Los Angeles Public Library, including digital materials from the Hoopla catalog offered through the library. *See* Tran Decl. ¶ 3. Without a library card to a California public library, Plaintiff Tran could not have accessed Hoopla's digital offerings. *See* FAC ¶¶ 47-51; Tran Decl. ¶¶ 2, 5. Plaintiff Tran's only benefit from accessing digital Hoopla materials is related to her own personal "research, learning, and recreational pursuits." *Am. Libr. Ass'n, Inc.*, 539 U.S. at 206; Tran Decl. ¶ 4.

Further, Defendant's own Terms and Conditions of Use ("Hoopla Terms"), which it argues are binding, fail to mention any transaction between Plaintiff Tran (and Class Members) and Defendant. *See* Merritt Decl. Ex. A (ECF No. 43-1). Instead, the Hoopla Terms state that users "must be an authorized Library Patron to access Content on the [Hoopla] Platform … The Platform

offers a wide variety of Content to our participating Libraries, which may curate the specific Content that is made available to their Patrons." *Id.* Ex. 1 § I.

Nowhere in the Hoopla Terms does Defendant acknowledge the existence of any transaction—much less a commercial transaction—between Plaintiff Tran (and Class Members) and Defendant. Indeed, the only time the word "transaction" appears in the Hoopla Terms is in Section 14 "Miscellaneous," in the sentence stating: "[y]ou agree that these Terms may be assigned by Midwest Tape, in our sole discretion, to a third party in the event of a business transaction involving ownership of the Platform or a change in ownership or control of Midwest Tape." *See* Merritt Decl. Ex. 1 § XIV (ECF No. 43-1). Rather, the Hoopla Terms explicitly contemplate a non-commercial relationship:

> If you are an authorized Library Patron, you may borrow and view the Content during the designated loan period *for your own, personal, non-commercial use only* ("Allowed Use") and, during that limited loan period only, Midwest Tape and/or its Content providers grant you a non-assignable, non-transferable, limited license to access the Content in digital form through the Platform and *for your personal, noncommercial, entertainment use*. The Content may be made accessible to you in accordance with limitations established by your Library.
>
> …
>
> You represent, warrant, and agree that you are using the Platform for your own personal, *noncommercial*, entertainment use…

*Id.* Ex. 1 § 2 (ECF No. 43-1) (emphases added). Thus, the Hoopla Terms have "nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *United States v. Lopez*, 514 U.S. 549, 561 (1995) (finding that statute regulating "firearm possession" in local school zones did not "affect[] interstate commerce").

At most, Defendant's agreements with the Plaintiff Tran's *library* could constitute commercial activity. Notwithstanding Defendant has not proffered facts supporting this—as is Defendant's burden—Plaintiff Tran and Class Members' only means of accessing Defendant's digital catalog is through their respective library memberships, meaning their access is limited by their respective libraries' agreements with Defendant. Therefore, Plaintiff Tran has not conducted any economic activity through accessing the Website. *See* Tran Decl. ¶¶ 4-5. Indeed, "[t]he

Commerce Clause is not a general license to regulate an individual from cradle to grave, simply because he will predictably engage in particular transactions." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 557 (2012).

Defendant avers that the FAA should apply because it "embodies a natural policy favoring arbitration." MTC at 8:7-8 (cleaned up). But whether there is a federal policy favoring arbitration has no important on whether the FAA applies in the first instance. After all, the California Arbitration Act embodies the same policy. *Valencia v. Smyth*, 185 Cal. App. 4th 153, 176 (2010) ("[U]nder the CAA, there is a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration.") (cleaned up). So the policy favoring arbitration of disputes has no bearing on which law applies. By contrast, the United States Constitution embodies a policy that the federal government shall only have the power to regulate "Commerce with foreign Nations, and among the several States," and that "[t]he powers not delegated to the United States by the Constitution … are reserved to the States." *See* U.S. CONST. art. I, § 8, cl. 3; *id.* amend. X.

In sum, Plaintiff Tran's alleged agreement with Defendant is not "commercial" in nature because libraries are not institutions engaged in "commerce." Thus, the FAA cannot apply.

**B. The Hoopla Terms Do Not Involve Or Affect Interstate Activity**

Even if the agreement here involves "commerce" (and it does not), Defendant has not met its burden to prove the Hoopla Terms govern an agreement concerning interstate activity, meaning the FAA does not apply.

As noted above, "the FAA applies if in the aggregate the economic activity in question would represent a general practice subject to federal control. Only that general practice need bear on interstate commerce in a substantial way." *Kin Wah Kung v. Experian Info. Sols., Inc.*, 2018 WL 2021495, at *2 (N.D. Cal. May 1, 2018) (cleaned up); *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995) ("[T]his Court has previously described the Act's reach expansively as coinciding with that of the Commerce Clause."). However, the FAA does not "reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989); *Bradley v. Brentwood Homes, Inc.*, 398 S.C. 447, 455 (2012) (same); *Southland Corp. v. Keating*, 465 U.S. 1, 14-15 (1984) ("We therefore

view the 'involving commerce' requirement in [FAA] § 2, not as an inexplicable limitation on the power of the federal courts, but as a necessary qualification on a statute intended to apply in state and federal courts.").

The Supreme Court has outlined three categories of interstate commerce: (i) channels of interstate commerce, which are "the interstate transportation routes through which persons and goods move," and include "highways, … railroads, navigable waters, and airspace, … as well as telecommunications networks" (*United States v. Morrison*, 529 U.S. 598, 613 n.5 (2000); *United States v. Ballinger*, 395 F.3d 1218, 1225-26 (11th Cir. 2005) (collecting cases)); (ii) instrumentalities of interstate commerce, which are the "people and things themselves moving in commerce, including automobiles, airplanes, boats, and shipments of goods" (*United States v. Ballinger*, 395 F.3d 1218, 1226); and (iii) activities substantially related to interstate commerce (*Lopez*, 514 U.S. at 558-59 (1995)). None are applicable to govern what Plaintiff Tran is doing here: borrowing reading and video materials from her public library through a library service.

*1. Cases Of Contracts Or Conduct That Do Not Affect Interstate Commerce*

A few cases should guide this Court's analysis. *First*, in *Lopez*, 514 U.S. at 551, "Congress made it a federal offense for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." (Cleaned up). The respondent—who was a student carrying a firearm in a school zone—challenged the law as "exceed[ing] Congress' power to legislate under the Commerce Clause." *Id.* at 551-52. The Supreme Court agreed, noting "[t]he possession of a gun in a local school zone is in no sense an economic activity that might … substantially affect any sort of interstate commerce." *Id.* at 567. Instead, the "[r]espondent was a local student at a local school; there is no indication that he had recently moved in interstate commerce, and there is no requirement that his possession of the firearm have any concrete tie to interstate commerce." *Id.*

*Second*, in *Hicks Unlimited, Inc. v. UniFirst Corp.*, 439 S.C. 623, 633 (2023), "UniFirst shipped the uniforms from Kentucky to South Carolina, and Hick's payments were made to and deposited by UniFirst in Massachusetts, the site of UniFirst's headquarters and board of directors."

The Supreme Court of South Carolina found "the contract between Hicks and UniFirst did not involve interstate commerce." *Id.* at 634. The court focused on the fact that, other than the contract being "between a Massachusetts company and a South Carolina company," "[t]here is no other sign the contract was to be performed using instrumentalities or channels of interstate commerce, or that the uniform supply involved any thing or matter *located beyond South Carolina's borders*." *Id.* (emphasis added).

*Last*, several cases have addressed whether transportation or delivery workers fall within the FAA's exception for transportation workers "engaged in … interstate commerce." 9 U.S.C. § 1. On one side of the equation, in *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 463 (2022), the Supreme Court found that an employee who "frequently loads and unloads cargo on and off airplanes that travel in interstate commerce … belongs to a class of workers engaged in foreign or interstate commerce." (Cleaned up). This was so because "airline employees who physically load and unload cargo on and off planes traveling in interstate commerce are, as a practical matter, part of the interstate transportation of goods." *Id.* at 457. The same was true of "last mile" Amazon delivery drivers who "pick up packages that have been distributed to Amazon warehouses, certainly across state lines, and transport them for the last leg of the shipment to their destination." *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 915 (9th Cir. 2020).

On the other side of the equation, food delivery drivers for local restaurants are not transportation workers "engaged in interstate commerce" because they are not "moving those goods across state or national borders." *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th Cir. 2020) (Coney Barrett, J.). It did not matter if "a piece of dessert chocolate may have traveled all the way from Switzerland" before being delivered. *Id.* Similarly, "Uber drivers [] in the business of providing local rides that sometimes—as a happenstance of geography—cross state borders" were not workers "engaged in interstate commerce." *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 560 (3d Cir. 2023). Instead, Uber drivers "serve[d] local communities." *Id.* at 562; *see also Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 863 (9th Cir. 2021) (concluding same); *Cunningham v. Lyft, Inc.*, 17 F.4th 244, 253 (1st Cir. 2021) ("[W]e conclude that Lyft drivers … are among a class of workers engaged

primarily in local intrastate transportation, some of whom infrequently find themselves crossing state lines.”).

To summarize these “transportation workers” cases, workers who performed the last step of delivering goods that had traveled across state lines were “engaged in interstate commerce.” *Saxon*, 596 U.S. at 463; *Rittmann*, 971 F.3d at 915. But drivers who serviced local restaurants or provided transportation within a local community were not. *Wallace*, 970 F.3d at 802; *Singh*, 67 F.4th at 562. As explained below, local libraries fall on the *Wallace*, *Singh*, and *Cunningham* side of the equation, and are also similar to the local activities at issue in *Lopez* and *Hicks*. Thus, Plaintiff Tran’s agreement is not one affecting “interstate commerce.”

*2. Plaintiff Tran’s Agreement With Defendant Does Not Involve Interstate Commerce, As Her Local Library Is Solely Involved In Intrastate Activities*

Local libraries providing reading and video materials to their patrons in their community “is not an activity that is, in general, subject to federal control,” but rather, “serve[s] local communities.” *Hicks*, 439 S.C. at 634; *Singh*, 67 F.4th at 562. The Los Angeles Public Library (“LAPL”), of which Plaintiff Tran is a patron, is run by a five-member “Board of Library Commissioners …. appointed by the Mayor for five-year staggered terms and confirmed by the City Council.”[1] Fraietta Decl. ¶ 2; *see also Lopez*, 514 U.S. at 551 (“Respondent was a local student at a local school…”). The LAPL has an entire webpage dedicated to helping library patrons access digital library material providers such as Hoopla. Fraietta Decl. ¶ 3.[2] If LAPL patrons want to access Defendant’s digital service from a web browser, they can search the LAPL catalog on the web browser and, if Defendant offers the material they are searching for, they click a link to access the hoopla web browser from the LAPL web browser. *See* Tran Decl. ¶¶ 3-5. Defendant itself even acknowledges that Plaintiff Tran was only able to “register for and access the hoopla Website *by virtue of her holding an account with a participating library*.” MTC at 9 (emphasis added). And Plaintiff Tran and other users are only able to access content “in accordance with limitations established by your Library.” Merritt Decl. Ex. 1 § II (ECF No. 43-1).

---

[1] https://www.lapl.org/about-lapl/board-library-commissioners

[2] https://www.lapl.org/books-emedia/e-media

Further, local libraries are not soliciting relationships with consumers across state lines; they expressly serve a localized market. For instance, the LAPL hosts in-person events at select locations[3] and routinely showcases exhibits focusing on local culture and history,[4] such as "UnMapping LA: Concrete Landscapes and ReImagined Futures" at varying library branch locations.[5] Fraietta Decl. ¶ 3. In addition, the LAPL's Central Library "and its 72 neighborhood branches offer a variety of free programs, workshops, and activities that enrich, educate, and empower every individual in [the] city's diverse communities."[6] Fraietta Decl. ¶ 3. The LAPL also partners with several Los Angeles "local cultural institutions" to offer "free or low-cost passes to participating organizations."[7] Fraietta Decl. ¶ 3. This is distinct from cases where an ostensibly local museum or institution "solicit[s] out-of-state tourists" and "invites and receives thousands of admission-paying visitors from beyond" the community. *907 Whitehead Street, Inc. v. Sec. of U.S. Dept. of Agriculture*, 701 F.3d 1345, 1351 (11th Cir. 2012) (finding museum's exhibition affected interstate commerce because "The Museum invites and receives thousands of admission-paying visitors from beyond Florida, many of whom are drawn by the Museum's reputation for and purposeful marketing of the Hemingway cats").

It is true that courts have generally found the use of the Internet to constitute interstate commerce because "the Internet is an instrumentality and channel of interstate commerce." *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007). However, there must be a limit to congressional reach even on the Internet. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 554 (2012) ("[O]ur cases have always recognized that the power to regulate commerce, though broad indeed, has limits.") (cleaned up). With respect to libraries, at least, both the Supreme Court and "Congress [have] recognized[] [t]he Internet is simply another method for making information available in a school or library. It is no more than a technological extension of the book stack." *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 207 (2003) (citing S. Rep. No. 106–141 at 7 (1999)). And

---

[3] https://www.lapl.org/events

[4] https://www.lapl.org/events/exhibits

[5] https://www.lapl.org/events/exhibits/unmapping-la

[6] https://www.lapl.org/about-lapl/perform-lapl

[7] https://www.lapl.org/explorela

California courts have long accepted that "[t]he Internet is undeniably an incident of interstate commerce, but the fact that communication thereby can affect interstate commerce does not automatically cause a state statute in which Internet use is an element to burden interstate commerce." *People v. Hsu*, 82 Cal. App. 4th 976, 983 (2000) (in case attacking validity of state statute under dormant Commerce Clause).

An example is enlightening. A pencil is manufactured from materials that are sourced in interstate commerce, and said pencil is then transported in the channels of interstate commerce across state lines to its final location of sale, ostensibly to a location in another state. Yet no court would agree that a library patron borrowing and using a pencil offered at their local library would constitute interstate commerce. *See, e.g.*, *Wallace*, 970 F.3d at 802 (finding interstate commerce worker exception inapplicable even though "[a] package of potato chips, for instance, may travel across several states before landing in a meal prepared by a local restaurant and delivered by a Grubhub driver").

The same is true of library patrons accessing Defendant's digital catalog offered through their local library. The fact that the content may be loaded on a consumer's mobile phone or desktop using cables or signals that cross state lines does not diminish the local character of the content itself—as it comes from the consumer's local library.

Thus, the Hoopla Terms are not a contract substantially affecting interstate commerce because they are an agreement to view content from Plaintiff Tran's local library, which serves a local community and does not cater to out-of-state individuals. Accordingly, the FAA is inapplicable to the Hoopla Terms.[8]

---

[8] *Kasper v. NFHS Network, LLC*, 2024 WL 4859082 (N.D. Cal. Nov. 20, 2024) does not affect this analysis. The plaintiff there did not argue the FAA did not apply to the transaction, nor could she. The *Kasper* plaintiff brought a federal VPPA claim (*id.*, at *1), which requires proving that the defendant was a "'video tape service provider' … engaged in the business in or affecting *interstate or foreign commerce*." 18 U.S.C. § 2710(a)(4) (emphasis added). Thus, proving plaintiff's claim in *Kasper* required showing (conceding) the defendant was engaged in interstate commerce, bringing the lawsuit within the FAA's purview.

## II. DEFENDANT'S DELEGATION CLAUSE, ARBITRRATION CLAUSE, AND CLASS ACTION WAIVER ARE UNCONSCIONABLE UNDER CALIFORNIA LAW, WHICH APPLIES IN THE ABSENCE OF THE FAA

Although Defendant argues that the arbitration clause delegates arbitrability to an arbitrator (*see* MTC at 14:22-24), the Court has jurisdiction to examine "whether the delegation provision [itself] is valid." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). "In evaluating an unconscionability challenge to a delegation provision … a court must be able to interpret the provision in the context of the agreement as a whole, which may require examining the underlying arbitration agreement as well." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1012 (9th Cir. 2023). "A court must consider the parts of the agreement that impact the delegation provision to decide its enforceability." *Heckman*, 120 F.4th at 681 (cleaned up). That is because "if a court cannot look through the delegation provision to the rest of the contract, a court would fail to see how delegating questions of arbitrability to an arbitrator was unconscionable." *Bielski*, 87 F.4th at 1012.

Here, Plaintiff Tran challenges the delegation clause as unconscionable, which it is pursuant to California law. And because the delegation clause is unconscionable, the Court may evaluate the arbitration clause itself and should strike it down for the same reasons. *See Heckman*, 120 F.4th at 690 (holding "the delegation clause and the arbitration agreement as a whole are both unconscionable under California law").

### A. The Delegation Clause Is Unconscionable Under *Discover Bank*

Because the FAA does not apply to the Hoopla Terms, California state law governs. *See Jackson v. Amazon.com, Inc.*, 559 F. Supp. 3d 1132, 1142-43 (S.D. Cal. 2021), *aff'd*, 65 F.4th 1093 (9th Cir. 2023) (applying "California state law to determine whether a valid agreement to arbitrate exists" "in the absence of the FAA" because "[w]here there is no choice-of-law provision, the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state.") (cleaned up).[9] "Because the FAA does not apply, the rule of *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005), governs th[is] case." *Heckman*, 120 F.4th at 689. And under *Discover Bank*, Defendant's delegation clause is unconscionable.

[9] Defendant claims the FAA governs the Hoopla Terms. *See* MTC at 5.

As the Ninth Circuit recently summarized:

> *Discover Bank* held that class waivers are unenforceable when contained in a "consumer contract of adhesion," when small damage disputes could predictably arise between the parties, and when the "party with the superior bargaining power" is alleged to have "carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money."

*Heckman*, 120 F.4th at 690 (quoting *Discover Bank*, 36 Cal.4th at 162-163).

*Discover Bank*'s rule applies here. The Hoopla Terms constitute a "contract of adhesion drafted by a party that has superior bargaining power," as Defendant—the company controlling access to its digital catalog and therefore the party with superior bargaining power—drafted the Hoopla Terms, which are a standardized agreement offered on a take-it-or-leave-it basis. *Suski v. Marden-Kane, Inc.*, 2022 WL 3974259, at *4 (N.D. Cal. Aug. 31, 2022); *Heckman v. Live Nation Entertainment, Inc.*, 686 F. Supp. 3d 939, 952 (C.D. Cal. 2023), *aff'd*, 120 F.4th 670 (9th Cir. 2024) ("[T]he elements of oppression and surprise are both satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to an inequality of bargaining power that resulted in no real negotiation and an absence of meaningful choice.") (cleaned up).

Further, the Hoopla Terms constitute "a setting in which disputes between the contracting parties predictably involve small amounts of damages." *Suski*¸ 2022 WL 3974259, at *4. And as in *Discover Bank*, Defendant is protected by the knowledge that logically, "relatively few, if any, customers will seek legal remedies [for Defendant's privacy violations], and that any remedies obtained will only pertain to that single customer" absent a class action. *Discover Bank*, 36 Cal. 4th 148, 159-60; *cf. Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271, at *14 (C.D. Cal. Sept. 8, 2014) ("[T]he Court is not persuaded that $5,000 in damages is so clearly sufficient to motivate individual litigation involving complex factual and legal issues as to weigh against class certification.")

Accordingly, *Discover Bank* applies and invalidates Defendant's delegation clause.

**B. The Arbitration Clause And Class Action Waiver Are Unconscionable Under *Discover Bank***

Because the delegation clause is unconscionable, "it falls to the district court … to determine whether the arbitration agreement as a whole is unconscionable and unenforceable." *Heckman*, 120 F.4th at 687. For the same reasons set forth above, the arbitration clause is unconscionable under *Discover Bank*. *See id.* at 690; *see also* Argument § II.A. Likewise, the class action waiver in the Hoopla Terms is unconscionable under *Discover Bank*. *Heckman*, 120 F.4th at 690.

**III. DEFENDANT'S FORUM SELECTION CLAUSE IS VOID**

Pursuant to Cal. Civ. Code § 1799.208, "[a] seller shall not require a consumer to agree to a provision that would … [r]equire the consumer to arbitrate outside of California a claim arising in California" or "[r]equire the consumer to arbitrate a controversy arising in California under the substantive law of a state other than California." Moreover, "[a]ny provision of a contract that violates" this rule "is voidable by the consumer, and if a provision is rendered void at the request of the consumer, the matter shall be adjudicated in California and California law shall govern the dispute." *Id.* This statute "applies to a contract entered into, modified, or extended on or after January 1, 2025."

Here, Plaintiff Tran has brought claims under exclusively California law (the CIPA, Cal. Civ. Code § 1799.3, and invasion of privacy under the California Constitution), and Plaintiff Tran's claims arise in California where her information was unlawfully disclosed. *See Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 (3d Cir. 2022) ("NaviStone intercepted Popa's communications at the point where it routed those communications to its own servers. And that was at Popa's browser…"). Yet Defendant's arbitration clause would require Plaintiff Tran to resolve her claims "in Lucas County, Ohio." Merritt Decl. Ex. 1 § XII (ECF No. 43-1). Accordingly, under Cal. Civ. Code § 1799.208, this provision is void.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Compel Arbitration should be denied.

Dated: July 2, 2025

Respectfully submitted,

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com
mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Emily A. Horne (State Bar No. 347723)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ehorne@bursor.com

*Attorneys for Plaintiffs*