Vincent M. Rizzo - #6313833
Todd P. Stelter - *admitted pro hac vice*
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Phone No.: 312-704-3000
Fax No. 312-704-3001
vrizzo@hinshawlaw.com
tstelter@hinshawlaw.com

Attorneys for Defendant
MIDWEST TAPE, LLC d/b/a HOOPLA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN SMITH and LYLY TRAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MIDWEST TAPE, LLC d/b/a HOOPLA,<br><br>Defendant. | Case No. 3:24-cv-08805-JD<br><br>**DEFENDANT MIDWEST TAPE, LLC D/B/A HOOPLA'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AS TO TRAN**<br><br>Date: August 14, 2025<br>Time: 10:00 a.m.<br>Courtroom: 11<br>Complaint Filed: December 6, 2024<br>Am. Complaint Filed: March 18, 2025<br>Trial Date: December 14, 2026 |

## I. INTRODUCTION

Plaintiff Tran does not contest that she agreed to defendant Midwest Tape's Terms and Conditions of Use ("TOU") for the Hoopla Service, which contained an arbitration provision and a class action waiver. *See* ECF No. 45. While plaintiff focuses most of her opposition arguing that California law, particularly its law regarding unconscionability, should be applied here instead of the Federal Arbitration Act ("FAA"), ECF No. 45 at Section I, it ultimately does not matter. Tran agreed to the TOU, including its arbitration provision, which forecloses the rest of her arguments on applicable law because the issues she raises are subject to arbitration.

Unlike her co-plaintiff Smith's response brief, ECF No. 35, Tran does state that she is challenging the clause delegating disputes under the TOU to arbitration under the

AAA. ECF No. 45 at 17. But Tran's Section II argument (ECF No. 45 at Section II) does not actually challenge the delegation clause of the TOU. Instead, Tran focuses her argument on class waiver clause. Consequently, Tran's argument fails to effectively challenge the delegation provision. As such, Tran's Section II "delegation clause" argument is a non-challenge to the actual delegation clause. Thus, this Court should follow its decision in *Kasper* granting the defendant's motion.

Tran's sole remaining argument is that the arbitration agreement and class action waiver are unconscionable under California law. ECF No. 45 at Section II. However, because the TOU incorporates AAA rules, this Court should not address or decide whether the arbitration agreement is unconscionable (under either the FAA or California law) because the parties have agreed to delegate the issue to the arbitrator. *See Kasper v. NFHS Network, LLC*, 2024 U.S. Dist. LEXIS 211406, *5-6 (N.D. Cal. 2024) citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (stating "incorporation of the AAA rules constitutes clear and unmistakable evidence that [the] contracting parties agreed to arbitrate arbitrability" and holding that "Kasper's unconscionability arguments about the arbitration agreement as a whole are for the arbitrator to decide."); *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 239-50 (2014) (finding that under California law the trial court lacked the authority to rule on whether the arbitration agreement was unconscionable after the parties' had delegated this authority to the arbitrator and holding that "the applicability of the [FAA] is immaterial" to this issue.).

And, even if this court were to consider the alleged unconscionability of the entire arbitration clause, Tran has not demonstrated procedural and substantive unconscionability.

## II. ARGUMENT

### A. The Parties Have Agreed to Delegate to the Arbitrator Whether the Agreement as a Whole is Unconscionable and the Applicability of the FAA is Immaterial to this Determination.

The TOU delegation clause here incorporates AAA rules. It expressly states:

> The American Arbitration Association (AAA) will administer the arbitration under its Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes.

ECF No. 43-1 at Ex. 1 at section "XII. GOVERNING LAW AND JURISDICTION."

In making a delegation clause challenge, plaintiffs bear the burden of proving that the delegation clause is unconscionable, both procedurally and substantively. *Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 880 (N.D. Cal. 2023). "[T]o sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023). In addition, the party must "articulate[] why the argument invalidates each specific provision." *Id*.

Tran does not actually challenge *this* clause in any way. ECF No. 45 at Section II. Instead, Tran appears to mistakenly argue that the class action waiver in the TOU is the delegation clause. *Id*.

But even if she did challenge the correct clause, her argument still fails. As this Court noted in *Kasper*, the Ninth Circuit in *Brennan* held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Kasper*, 2024 U.S. Dist. LEXIS 211406 at *5-6, citing Brennan, 796 F.3d at 1130. And, when that is the case, the only remaining question is whether the delegation provision itself is unconscionable. *Fli-lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199 (9th Cir. 2024) citing *Brennan*, 796 F.3d at 1132. If a plaintiff fails to make any arguments specific to the delegation provision and instead argues that the arbitration clause as a whole is unconscionable under state law, the court may not consider that claim because it is for the arbitrator to decide in light of the parties' clear and unmistakable delegation of that question. *Fli-lo* at 1199; *Brennan* at 1133.

Here, Tran's response brief fails on all fronts. She does not specifically reference the actual delegation provision. Nor does Tran articulate any reason why the delegation provision in the TOU is invalid. And she makes no argument whatsoever suggesting

that delegating authority to the arbitrator via incorporating AAA rules is somehow improper. Tran has not met her burden.

This Court has repeatedly upheld similar delegation clauses under challenges far more specific and substantive than Tran's here. *See Kasper*, 2024 U.S. Dist. LEXIS 211406 at *5-6; *Cruz v. Cambridge Real Est. Servs., Inc.*, 2023 U.S. Dist. LEXIS 73854, *5-6 (N.D. Cal. 2023); *McClellan v. Fitbit, Inc.*, 2017 U.S. Dist. LEXIS 168370, *6-7 (N.D. Cal. 2017). Because Tran's response fails to make any arguments specific to the delegation provision, this Court need only follow *Fli-lo*, *Brennan* and *Kasper* as they are all dispositive as to this issue.

Tran's response further argues that the FAA does not apply and that California law should be applied instead, and that this court should hold the arbitration agreement unconscionable as a whole. ECF No. 45. As explained in § B below, the FAA applies. But even if it did not, Tran's argument is misguided. Even under California law the correct focus for the court *is on the delegation clause, not the contract as a whole*.

The plaintiff in *Tiri* asserted the same argument as Tran does here. 226 Cal. App. 4th at 239-50. But the court in *Tiri* concluded "that the FAA's applicability is immaterial because our decision in this case would be the same under either the FAA or the [California Arbitration Act]." In reaching its decision, the *Tiri* court noted that "California courts often look to federal law when deciding arbitration issues under state law" and "[t]hey have specifically looked to the FAA when considering delegation clauses and have long held that the rules governing these clauses are the same under both state and federal law." *Id.* at 240 citing *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 553 (2004) (collecting cases). The court went on to hold that "any claim of unconscionability must be *specific to the delegation clause*" (emphasis in original) and concluded that "it will be for the arbitrator to consider the conscionability of the agreement as a whole …" Id. at 244 and 250. Again, Tran does not actually argue that the delegation clause itself is unconscionable. Therefore, this Court should follow *Tiri* (and its own decision in *Kasper*) and grant defendant's motion

**B. Although It Is Immaterial, Should This Court Rule on the Issue, It Should Hold That the FAA Applies.**

As indicated above, this Court need not rule on whether the FAA applies here in order to grant defendant's motion. However, if for some reason it does take on that issue, it should rule that the FAA applies.

Tran claims that her use of the Hoopla Service does not constitute a commercial transaction. ECF No. 45 at 10 and generally at ECF § I(A). But, contrary to her claim, when Tran borrowed content from the Hoopla Service, she was transacting with Midwest Tape to obtain a limited license to access that content. This transaction is described in the very section of the TOU that Tran cites in her response brief, specifically that Midwest Tape granted her "a non-assignable, non-transferable, limited license to access the Content…" ECF No. 45 at 10. Under the TOU, Tran's borrowing of content from the Hoopla Service is a commercial licensing transaction.

And Tran's FAC demonstrates the interstate nature of the licensing transaction. Tran alleges that defendant is "incorporated in Ohio and has its principal place of business in Holland, Ohio." ECF No. 33 ¶ 26. In the same paragraph, she states that defendant "owns and operates the digital library rental catalog and the digital distribution service that partners with libraries nationwide, found at hoopladigital.com..." *Id.* Later, plaintiff asserts that "[d]efendant owns and operates the Hoopla Website, which provides the Hoopla Service and distributes digital reading and video materials to account holders across the entire United States." ECF No. 33 ¶ 46. Finally, Tran alleges that she accessed the Hoopla Website while she was in California (rather than Ohio). ECF No. 33 ¶ 51.

Moreover, the Ninth Circuit holds that use of the Internet generally constitutes engaging in interstate commerce. *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007). In *Sutcliffe*, the court held that:

> "The Internet is an international network of interconnected computers, [citing] *Reno v. ACLU*, 521 U.S. 844, 849 (1997), similar to--and often

> using--our national network of telephone lines, [citing] *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005). We have previously agreed that '[i]t can not be questioned that the nation's vast network of telephone lines constitutes interstate commerce,"' [citing] *United States v. Holder*, 302 F. Supp. 296, 298 (D. Mont. 1969), *aff'd and adopted*, 427 F.2d 715 (9th Cir. 1970) (per curiam), "and, a fortiori, it seems clear that use of the internet is intimately related to interstate commerce. As we have noted, '[t]he Internet engenders a medium of communication that enables information to be quickly, conveniently, and inexpensively disseminated to hundreds of millions of individuals worldwide.' [citing] *United States v. Pirello*, 255 F.3d 728, 729 (9th Cir. 2001). It is 'comparable . . . to both a vast library including millions of readily available and indexed publications and a sprawling mall offering goods and services,' [citing] *ACLU*, 521 U.S. at 853, and is 'a valuable tool in today's commerce,' [citing] *Pirello*, 255 F.3d at 730. We are therefore in agreement with the Eighth Circuit's conclusion that "[a]s both the means to engage in commerce and the method by which transactions occur, 'the Internet is an instrumentality and channel of interstate commerce.' [citing] *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) (per curiam) (quoting *United States v. MacEwan*, 445 F.3d 237, 245 (3d Cir. 2006)); *see also United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ('Congress clearly has the power to regulate the internet, as it does other instrumentalities and channels of interstate commerce . . . .')." *Sutcliffe* at 952-53.

It therefore follows that the licensing transaction here, between a limited liability company based in Ohio and a resident of California, over the internet, constitutes interstate commerce. The conclusion that the transaction involves interstate commerce is bolstered by the fact that the license is not limited to California.

In an attempt to argue in favor of this court adopting her argument to limit the scope of the FAA, Tran's response brief mischaracterizes the law in discussing *Evenskaas v. California Transit, Inc.*, 81 Cal. App. 5th 285, 292 (2022), suggesting that *Evenskaas* supports her argument. ECF No. 45 at 7. To the contrary, the court in *Evanskaas* recognized the *breadth* of the FAA, holding that "it is perfectly clear that the FAA encompasses a wider range of transactions that those actually 'in commerce' –that is, 'within the flow of interstate commerce…" *Evenskaas* at 293 citing *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). The court further held that "[c]onsistent with

Congress' power to regulate an entire class of activity, FAA preemption does not require that an agreement has a specific effect on interstate commerce." *Id.* As noted above, Tran's accessing content on the Hoopla Website is unquestionably "within the flow of interstate commerce" as it involves not just a transaction involving the grant of a license to access content via the internet but also between parties situated in different states.

Tran attempts to analogize the licensing transaction at issue here with a patron checking out a library book or borrowing a pencil. ECF No. 45 at 7, 8, and 16. But this is a false equivalency. In both instances, the library book or pencil was acquired by the library before the transaction at issue with the theoretical patron. This is vastly different than Tran's interaction with the Hoopla Service, wherein the Los Angeles Public Library incurs a fee associated with Tran's acquisition of the content from the Hoopla Service via the internet. The transaction by which Midwest Tape grants the limited license to Tran is one part of a multiparty transaction among Midwest Tape as the distributor of the content, Tran, the publisher or rights holder of the content, and the Los Angeles Public Library, which pays the costs associated with Midwest Tape's issuance of a license. There can be no question that the licensing transaction between Tran and Midwest Tape directly or even indirectly affects interstate commerce. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995) (noting that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce) and *Evankass*, 81 Cal. App. 5th at 293 ("it is perfectly clear that the FAA encompasses a wider range of transactions that those actually 'in commerce' –that is, 'within the flow of interstate commerce…").

Finally, Tran asks this court to apply a blanket rule carving out library-related transactions of interstate commerce. As demonstrated by the court's holding that a library was involved in interstate commerce in *United States v. Zajac*, 2008 U.S. Dist. LEXIS 32707, *5-6 (D. Utah 2008), Tran is overreaching. The court in *Zajac* stated:

> "A substantial portion of the library's collection has moved in interstate commerce. The goods and services are available to the general public,

> including travelers from outside of the state. The Library … has far more interstate connections and activity than a local church."

*Zajac* at *6-8, citing *United States v. Gillespie*, 452 F.3d 1183, 1188 (8th Cir. 2006).

In sum, Tran does not advance any compelling argument in her response for her conclusion that the licensing transaction between she and Midwest Tape did not involve interstate commerce. On the contrary, the transaction at issue involved interstate commerce, and therefore the FAA (and *Kasper*) should apply.

### C. Although It Is An Issue for the Arbitrator to Decide, Should This Court Rule on the Issue, It Should Hold That No Part of the Agreement is Unconscionable.

Finally, even if the court were to go beyond consideration of the delegation clause, nothing about the TOU is unconscionable. For Tran to successfully employ an unconscionability defense, she must demonstrate both procedural and substantive unconscionability. *See Ireland-Gordy v. Tile, Inc.*, 760 F. Supp. 3d 946, 959 (N.D. Cal. 2024); *James v. Comcast Corp.*, 2016 U.S. Dist. LEXIS 107905, *13 (N.D. Cal. 2016). Here, the TOU is not unconscionable under either argument.[1]

Plaintiff first argues that the TOU is procedurally unconscionable because it is offered on a take-it-or-leave-it basis. ECF No. 45 at 18. However, this Court has already previously held that "offering arbitration and other terms on a take-it-or-leave-it basis is not enough to find an agreement to arbitrate unenforceable." *Johannessen v. JUUL Labs, Inc.*, 2024 U.S. Dist. LEXIS 110903, *5 (N.D. Cal. 2024) (citing cases). To the contrary, procedural unconscionability focuses on "oppression" and "surprise." *James* at *12-13. The key inquiry in establishing the existence of oppression is showing unequal bargaining power and lack of meaningful choice on the part of one party. *Id.*

Tran has failed to establish either oppression or surprise. As to oppression, Tran could opt out of the transaction at any time she wanted. The TOU states: "If you do not

---

[1] This Court recently rejected similar arguments made in a response filed by the same plaintiff's counsel as in this case, Bursor & Fisher, in granting defendant's motion to compel arbitration in *Sarhadi v. Pear Health Labs, Inc.*, 2025 U.S. Dist. LEXIS 93495, *24-25 (N.D. Cal., Apr. 18, 2025).

agree to or cannot comply with the Terms, do not install or use the Platform or any software …" ECF No. 43-1 at Ex. 1 at section "I. INTRODUCTION." Literally, nothing prevented Tran from just opting out. Certainly, defendant does not have a monopoly on books and movies nor access to them. This is in marked comparison to Ticketmaster, the defendant in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024),[2] that was the only avenue through which plaintiffs could obtain tickets and presented its contract on a take-it-or-leave-it basis. No such situation exists here. Tran can cancel and stop using the Hoopla Service at any time, without penalty.

As to surprise, this element involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the form drafted by the party seeking to enforce the disputed terms. *James*, 2016 U.S. Dist. LEXIS 107905 at *12-13. However, "failing to highlight" does not equal "hide" with respect to arbitration provisions. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015). Here, the full terms of the TOU were presented to Tran for her review, and she accepted those terms. There was no "surprise," and Tran does not even offer an argument that there was.

Tran's response brief also does not appear to even make an argument regarding substantive unconscionability. ECF No. 45 at Section II. In order to establish substantive unconscionability, Tran "needs to identify evidence of 'overly harsh' or 'one-sided' terms in the arbitration clause to prevent enforcement." *Martinez v. Ross Stores, Inc.*, 2019 U.S. Dist. LEXIS 152444, *7 (N.D. Cal. 2019). However, like the plaintiff in *Martinez*, Tran here has made no such showing. Again, "procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Id*. at *6. Here, Tran has completely failed to establish either.

---

[2] In addition to being distinguishable on its facts, *Heckman* did not alter the requirement that a party must specifically challenge a delegation clause to advance its unconscionability argument, which Tran's reply did not do.

Finally, Tran argues that the forum selection is void because it requires arbitration in Lucas County, Ohio. ECF No. 45 at 19. However, the forum selection clause is not so limited. It clearly allows that the "proceedings shall occur in Lucas County, Ohio, unless the arbitrator determines that another, mutually convenient arbitration forum is required by applicable law." ECF No. 43-1 at Ex. 1 at section "XII. GOVERNING LAW AND JURISDICTION. Therefore, Tran is citing an issue that does not exist.

## III. CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant its Motion to Compel Arbitration as to Tran and exercise its discretion to refer these proceedings to arbitration.

Dated: July 9, 2025

HINSHAW & CULBERTSON LLP

By: */s/Vincent M. Rizzo*
Vincent M. Rizzo
Attorney for Defendant
MIDWEST TAPE, LLC d/b/a HOOPLA

# CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2025, a copy of the foregoing was served by ECF to counsel of record.

*/s/ Vincent M. Rizzo*